IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DWAYNE MCELWEE,<br><br>　　　　Petitioner,<br><br>　v.<br><br>ANTHONY KANE,<br><br>　　　　Respondent. | No. C 05-03768 CRB<br><br>**ORDER DENYING PETITION FOR HABEAS CORPUS** |

　　　Petitioner Dwayne McElwee is currently incarcerated at the Correctional Training Facility in Soledad, California. McElwee pleaded guilty to second degree murder in the Superior Court of the State of California. The court sentenced him to 15 years to life. McElwee has appeared six times before the Board of Parole Hearings (the "Board"). The Board denied parole each time. McElwee's petition for a writ of habeas corpus argues that the Board's most recent refusal to grant him parole violates his Fourteenth Amendment right to due process because it (1) relied solely on the nature of the murder and (2) characterized the commitment offense as a first degree murder in violation of McElwee's agreement to plead guilty to second degree murder. Now pending before the Court is respondent's motion to dismiss on the grounds that (1) the Court lacks subject matter jurisdiction to hear the claim and, even if the Court has subject matter jurisdiction, (2) McElwee's petition fails to state a claim for relief. After carefully considering the parties' briefs, the Court hereby DENIES the petition.

**FACTUAL BACKGROUND**

Two events are important to the resolution of this case: the murder itself and McElwee's final Board hearing.

**A.     The Murder**

On September 30, 1981, McElwee murdered Gary Morris. The murder resulted from a drug deal gone wrong. The day of the murder, McElwee went to a car wash with Phillip Bains and Scentoria Watson for the purpose of buying PCP. McElwee met Morris, the victim, and William.[1] William and Morris were friends. William was given $200 to buy PCP. William left with the money, ostensibly to go purchase the drugs. William never returned. McElwee, Bains, Watson, and Morris walked around for two hours looking for William before returning to the car. McElwee drove to an alley and told Morris to exit the car. McElwee alleges that the victim then kicked him. McElwee pulled out a gun and shot the victim twice in the head. The first bullet entered the victim's face. The second bullet entered the back of Morris' head. Either bullet would have killed Morris.

Initially, the government charged Morris with first degree murder. However, as part of a plea agreement, the government reduced the charge to second degree murder. In accordance with the agreement, McElwee pleaded guilty to the second degree murder of Morris in California Superior Court. On September 10, 1984, the court sentenced McElwee to 15 years to life.

**B.     The 2004 Parole Eligibility Hearing**

McElwee became eligible for parole on July 23, 1993. Since his incarceration, the Board has held a series of hearings to determine whether to set a parole release date for McElwee. At each hearing, the Board denied parole for a period of one or two years. On February 4, 2004, McElwee appeared before the Board for his sixth parole consideration hearing. McElwee challenges the actions of the Board at this hearing.

At the 2004 hearing, the Board considered a wide variety of evidence, some of it favorable to McElwee. McElwee held various jobs in prison. Each one of his supervisors

---

[1] The record does not reveal William's last name.

2

issued a favorable report. McElwee participated in Alcoholics Anonymous and Narcotics Anonymous continuously for the past 15 years. During his time in prison, McElwee had only two minor disciplinary infractions, the last of which was a 1997 violation for an overdue library book. The most recent psychiatric report, issued in 2003, radiated praise for McElwee.

However, not all of the evidence was positive. McElwee's counselor's evaluation, issued at some point after McElwee began serving his term, casts doubt on McElwee's claim that he felt remorse over the murder. Instead, the report states that McElwee "refuses to accept responsibility" for the crime and maintains "it was an act of self-defense . . . ." Pet. for Writ of Habeas Corpus ("Pet."), Ex. A ("Board Hearing") at 36.

In addition, McElwee gave conflicting accounts of his memory of the murder. At the hearing, a parole board commissioner asked McElwee how he ended up shooting Morris in the back of his head. McElwee claimed that Morris was facing McElwee when he fired both shots. McElwee hypothesized that the first bullet to Morris' face knocked him backwards so that the second bullet entered in the back of his head. Later, McElwee claimed that after he fired the first shot, he went into a state of shock. McElwee alleged that this shock erased the memory of firing the second shot from his mind. A commissioner pointed out that this testimony conflicted with McElwee's recollection that the victim was facing him when he fired the second shot. McElwee then admitted that he remembered firing the second shot.

After reviewing this and other evidence with McElwee, the Board declined to set a parole date. The Board concluded that McElwee "would pose an unreasonable risk to society if released from prison." Id. at 77. The primary reason the Board declined to set a parole date was the manner in which the murder took place. The Board believed that the "manner in which it was carried out shows an obvious disregard for the lack of another human being's life." Id. The Board also concluded that the murder was aggravated, carried out in a cruel fashion, and based on a trivial motive. The Board based these conclusions on the circumstances of the crime.

//

The Board gave a second reason for denying parole to McElwee. It determined that he needed "continued participation in self-help." Id. at 79. The Board believed that McElwee needed to "further delve into the causative factors for his participation" in the murder. Id. The Board hoped that self-help would allow McElwee to develop "the appropriate level of insight into what happened" the day of the murder. Id. The Board based this conclusion upon discrepancies in McElwee's account of how the crime occurred. The Board stated that these discrepancies appeared in the "Board reports, the psychological reports, [and] all of the official documents . . . ." Id.

## PROCEDURAL HISTORY

On April 12, 2004, McElwee filed a petition for writ of habeas corpus in the California Superior Court for the County of Los Angeles. The Superior Court denied his petition on the merits. McElwee timely appealed to the California Court of Appeal, which denied McElwee's petition. McElwee filed a timely petition for review with the California Supreme Court. On June 22, 2005, the Supreme Court denied McElwee's petition for review. McElwee then filed the instant petition on September 19, 2005. At this time, no party disputes that McElwee has exhausted his state remedies.

## STANDARD OF REVIEW

The Court may entertain a petition for a writ of habeas corpus under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. § 2254(d).

4

The only definitive source of clearly established federal law under 28 U.S.C. section 2254(d) "is the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision." Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003) (citing Williams, 529 U.S. at 412). "While circuit law may be 'persuasive authority' for purposes of determining whether a state court decision is an unreasonable application of Supreme Court law, only the Supreme Court's holdings are binding on the state courts and only those holdings need be 'reasonably' applied." Id.

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. 362, 411 (2000).

When determining whether a state court decision affirming a parole board's denial of parole merits habeas relief, the Ninth Circuit focuses on the reasons set forth in the decision of the parole board. See Rosas v. Nielson, 428 F.3d 1229, 1232 (9th Cir. 2005). If the decision of the parole board does not disclose a violation of the Constitution or federal law, the state court decision affirming the parole board's denial neither unreasonably applies federal law nor rests on an unreasonable determination of facts. See id. at 1232-33.

Rule 4 of the Rules Governing section 2254 cases allows the respondent to file a motion to dismiss a petition for habeas corpus. White v. Lewis, 874 F.2d 599, 602-03 (9th Cir. 1989). A district court may grant a Rule 4 motion to dismiss when no claim for relief is stated. O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990). Dismissal is appropriate when the facts alleged in the petition do not entitle the petitioner to habeas relief as a matter of law. See id. at 423.

## DISCUSSION

### I. Constitutional Liberty Interest in Parole

Respondent argues that the Court lacks jurisdiction to review McElwee's petition because it alleges violation of a right that does not exist. Yet, this right is clearly established by binding precedent.

5

A person convicted of a crime has no inherent constitutional right to release before his valid sentence expires. Greenholtz v. Inmates of the Neb. Penal & Corr. Complex, 442 U.S. 1, 7 (1979). However, a state statute that indicates that parole release must be granted unless certain findings are made creates a liberty interest in parole protected by the Due Process Clause of the Fourteenth Amendment. See Bd. of Pardons v. Allen, 482 U.S. 369, 376-78 (1987) (holding that Montana parole statute providing that board shall release prisoner, subject to certain restrictions, creates due process liberty interest in release on parole); Greenholtz, 442 U.S. at 11-12 (holding that Nebraska parole statute providing that board shall release prisoner, subject to certain restrictions, creates due process liberty interest in release on parole).

"Under the 'clearly established' framework of Greenholtz and Allen, . . . California's parole scheme gives rise to a cognizable liberty interest in release on parole." McQuillion v. Duncan, 306 F.3d 895, 902-903 (9th Cir. 2002); see also Lewis v. Solis, No. C 04-2152 JF, 2005 U.S. Dist. LEXIS 39828, at *11 (N.D. Cal. 2005). California Penal Code section 3041(b) states that the parole board "shall set a release date unless it determines that the gravity of the current or convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration . . . ." Just like the statutes in Allen and Greenholtz, section 3041(b) gives rise to a presumption that release on parole will be granted unless certain enumerated determinations are made. McQuillion, 306 F.3d at 903. An inmate of a California prison possesses this liberty interest in parole regardless of whether a parole release date has been set for him. Biggs v. Terhune, 334 F.3d 910, 914, 915 (9th Cir. 2003) ("The liberty interest is created, not upon the grant of parole, but upon the incarceration of the inmate.")

Against this impressive array of precedent, respondent argues that McElwee does not have a liberty interest in release on parole because the California Supreme Court has extinguished that liberty interest. Cf. Greenholtz, 442 U.S. at 11-12 (noting that the Court was "denied the benefit of the Nebraska courts'" determination of whether the Nebraska

6

statute provided inmates with a liberty interest in parole). Yet respondent misreads In re Dannenberg, the case on which it relies to support this proposition. 34 Cal. 4th 1061 (2005).

First, the main issue facing the court in Dannenberg was whether section 3041 requires the Parole Board to compare an inmate's period of incarceration with the period of incarceration of others serving terms for the same crime before deciding whether to set a parole release date. 34 Cal. 4th at 1069. The court concluded it does not. Id. at 1090-91. In deciding this issue, however, the court never squarely considered whether its laws give rise to a liberty interest in parole under the Fourteenth Amendment.

Respondent interprets Dannenberg to hold that section 3041 in its entirety does not use the word shall in a mandatory sense. But, the Dannenberg court merely concluded that section 3041*(a)* uses shall in a non-mandatory sense. Id. at 1087. Section 3041(a) does not give rise to the liberty interest in parole; rather, section 3041(b) does. See McQuillion, 306 F.3d at 903. In fact, the Dannenberg court proceeded to construe section 3041(b) to impose a mandatory duty on the Board of Parole Hearings. See In re Dannenberg, 34 Cal. 4th at 1098. Thus, the Court concludes that Dannenberg does not eliminate the liberty interest in parole enunciated in McQuillion.[2]

## II. The Some Evidence Standard

### A. Legal Standard

When examining a parole board's decision for a due process violation, a federal court may only engage in a limited review. Pedro, 825 F.2d at 1399. A parole board's decision must be upheld if it rests on "some evidence" having "some indicia of reliability." Jancsek, 833 F.2d at 1390.

Initially, a parole board may deny parole based on the circumstances of the offense and conduct prior to imprisonment. Biggs, 334 F.3d at 916. However, the Ninth Circuit has stated in dicta that over time, a board's repeated denial of parole based only on the nature of

---

[2] Respondent also cites to Sass v. California Board of Prison Terms in support of his argument that this court lacks subject matter jurisdiction. Mot. to Dismiss at 6 (citing 376 F. Supp. 2d 975 (2005)). The Court, however, finds the Sass court's interpretation of Dannenberg unpersuasive. Accord Lewis, 2005 U.S. Dist. LEXIS 39828, at *9.

the offense and on conduct that occurred prior to imprisonment "would raise serious questions involving [an inmate's] liberty interest in parole." Id. Nonetheless, the Fourteenth Amendment allows a parole board to deny an inmate parole for years based on the nature of the commitment offense and some other, reliable evidence that arises after the imprisonment. See Rosas, 428 F.3d at 1232 (holding that the circumstances of a second degree murder combined with psychiatric reports issued before the inmate's first parole hearing constitute some evidence with sufficient reliability to support a decision to deny an inmate parole for at least five years); Lewis, 2005 U.S. Dist. LEXIS 39828, at *16 (holding that the circumstances of a second degree murder combined with disciplinary violations constitute some evidence with sufficient reliability to support a decision to deny an inmate parole for the second time).

The Board of Parole Hearings enjoys wide discretion in decisions related to parole. Rosas, 428 F.3d at 1232. California law requires the Board to consider all available relevant and reliable information. Cal. Code Regs. tit. 15, § 2402(b) (2006). Such information includes the gravity of the crime for which the inmate was convicted and the prisoner's attitude towards the crime. Id. California regulations enumerate circumstances that tend to show an inmate's unsuitability for parole. Id. at § 2402(c). The following circumstances that relate to the conviction offense may indicate that the inmate is not suitable for release: (1) the manner in which the inmate carried out the crime indicates "an exceptionally callous disregard for human suffering;" and (2) the inmate's motive for committing the crime was "very trivial in relation to the offense." Id. at § 2402(c)(1).

These regulations also list circumstances that tend to show that the inmate is suitable for release. Id. at § 2402(d). An inmate's demonstration that he feels remorse tends to show suitability for release. Id. at § 2402(d)(3). Evidence that the inmate "understands the nature and the magnitude of the offense" indicates the presence of remorse, and thus also supports a board's conclusion that the inmate should be paroled. Id.

//

//

**B.     Analysis**

Here, the Board's decision to deny McElwee parole satisfies the "some evidence" standard. The Board gave two reasons for its decision. First, the Board determined that the nature of the murder indicated McElwee's unsuitability for parole. The Board explained that McElwee's motive for the crime was trivial, which McElwee concedes to be true. Pet. at 24.

Second, the Board concluded that McElwee lacked an appropriate level of understanding of the nature of his crime. The Board implied that McElwee failed to convince them of his remorse for the crime. The record contains evidence that supports these conclusions. McElwee's counselor's evaluation, issued after McElwee began serving his term, casts doubt on McElwee's claim that he felt remorse over the murder. This evaluation states that McElwee "refuses to accept responsibility" for the crime and maintains "it was an act of self-defense . . . ." Board Hearing at 36. Furthermore, at the hearing, McElwee gave conflicting accounts of his memory of the murder. According to the Board, this discrepancy demonstrated that McElwee did not yet fully understand the nature of his crime. Under California regulations, this lack of understanding undermines a claim of remorse. See § 2402(d)(3). Thus, the Board's conclusion that McElwee did not demonstrate an appropriate level of understanding into the nature of the murder found support in post-incarceration evidence with some indicia of reliability. Because the Fourteenth Amendment requires no more, McElwee's claim fails.

**III.    Plea Agreement**

McElwee alleges that the Board characterized the commitment offense as a first degree murder in violation of McElwee's agreement to plead guilty to second degree murder. McElwee, however, presents no evidence to support this argument.

California law defines the elements of first degree murder. Unless the defendant killed the victim during the commission of an enumerated felony, a conviction of first degree murder requires the government to prove that the murder was "willful, deliberate, and premeditated . . . ." Cal. Pen. Code § 189. "Traditionally, premeditated has been defined as on preexisting reflection . . . ." People v. Thomas, 2 Cal. 4th 489, 546 (1992) (internal

quotation marks omitted). California courts have defined deliberate as "resulting from careful thought and weighing of considerations." Id. (internal quotation marks omitted). "The terms have been further defined by their antonyms." Id. A premeditated killing is not spontaneous. Id. A deliberate killing is not impetuous, hasty, impulsive, or rash. Id.

The Board never stated or implied that McElwee's crime was murder of the first degree. Instead, the Board evaluated McElwee's crime using the parole suitability factors California regulations *require* it to use. See Cal. Code Regs. tit. 15, § 2402(b). Furthermore, none of the Board's statements paint McElwee's murder as willful, deliberate, or premeditated. The Board's primary justification for denying McElwee parole was the circumstances surrounding the murder. The Board concluded that "[t]he manner in which it was carried out shows an obvious disregard for the lack of another human being's life." Board Hearing at 77. The Board seemed to accept McElwee's characterization of the murder as a response to being kicked by the victim. Furthermore, the Board reasoned that "the manner in which [McElwee] responded [was] very aggravated and it was carried out in a cruel fashion." Id. at 78. Moreover, there is no indication in the record that the Board considered any factor generally associated with first degree murder. Thus, McElwee's claim that the Board violated his plea agreement fails.

## CONCLUSION

For the foregoing reasons, McElwee's petition does not entitle him to habeas relief. The state court's decision upholding this denial neither unreasonably applied federal law nor rested on an unreasonable determination of facts. Accordingly, the Court concludes that it has subject matter jurisdiction to review the petition for habeas corpus and hereby DENIES the petition.

**IT IS SO ORDERED.**

Dated: March 21, 2006

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE